1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10

11   SHARLEEN SPRAGUE, Personal              CASE NO. 14-5084 RJB
     Representative of the Estate of JAMES
12   OLSON,                                  ORDER ON PLAINTIFF'S MOTION
                                             TO CERTIFY QUESTIONS AND
13                        Plaintiff,         PFIZER, INC.'S MOTION FOR
                                             SUMMARY JUDGMENT
14          v.

15   PFIZER, INC.,

16                        Defendant.

17

18          This matter comes before the Court on Plaintiff's Motion to Certify Questions to the

19   Washington Supreme Court (Dkt. 60) and Defendant Pfizer, Inc.'s Motion for Summary

20   Judgment (Dkt. 49).  The Court has considered the pleadings filed in support of and in opposition

21   to the motions and the file herein.

            This case arises from the death of James Olson as a result of malignant pleural
22
     mesothelioma that Plaintiff alleges was caused by exposure to asbestos containing products made
23
     by Quigley Co., Inc., a former subsidiary of Defendant Pfizer, Inc.  Dkt. 1.  Quigley has
24

1     undergone a reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, and

2     the reorganization plan channels almost all asbestos lawsuits against Quigley and Pfizer into an

3     asbestos trust under 524(g) of the Bankruptcy Code.  Dkt. 50-1, at 6-18.  The channeling

4     injunction does not cover "a claim against [Pfizer] alleging a theory of apparent manufacturer

5     liability under Restatement (Second) of Torts § 400."   Dkt. 50-1, at 14.  Plaintiff now moves for

6     certification of questions to the Washington State Supreme Court regarding the scope of § 400

7     under Washington law and whether she has provided enough evidence to "justify a jury in

8     finding liability."  Dkt. 60.  Pfizer now moves for summary dismissal of the case, arguing that

9     Plaintiff cannot prove it was an "apparent manufacturer" under § 400 and so the bankruptcy

10     injunction prohibits Plaintiff's suit.  Dkt. 49.  For the reasons stated below, Plaintiff's motion to

11     certify should be denied, Pfizer's motion for summary judgment should be granted, and the case

12     dismissed.

13                        **I.**        **RELEVANT FACTS**

14          In 1936, Quigley created and trademarked Insulag.  Dkt. 50-1, at 50.  At that time,

15     Insulag contained chrysotile asbestos.  Dkt. 49.  It also produced a similar asbestos-containing

16     product, Panelag.  Dkt. 50-1.

17          In 1968, Pfizer acquired all of Quigley's capital shares and Quigley became a wholly-

18     owned subsidiary of Pfizer.  Dkt. 50-1, at 64-65.  Meanwhile, Quigley continued to design,

19     manufacture, sell, and distribute its asbestos products.  Dkt. 50-1.  In late 1972, Quigley

20     developed an astestos-free product – "Insulag AF."  Dkt. 50-1, at 52-59.  By early 1974, Quigley

21     stopped selling Insulag.  Dkt. 59-18, at 2.

22          Decedent Mr. Olson's exposure to Quigley's asbestos containing products is alleged to

23     have occurred in 1968 to 1974 at or near the Puget Sound Naval Shipyard ("PSNS").  Dkt. 1.

24

1     In 2004, Quigley reorganized pursuant to Chapter 11 of the United States Bankruptcy

2 Code.  *In re Quigley Co, Inc.*, No.  04-15739 SMB (Bankr. S.D.N.Y.) Dkt. 2670-1; filed in this

3 case as Dkt. 23-1, at 2.  The reorganization plan channels all asbestos lawsuits against Quigley

4 and Pfizer, as the parent company, to an asbestos trust under 11 U.S.C. § 524(g) of the

5 Bankruptcy Code.  *Id.*  The only exception to the channeling injunction is for claims alleging that

6 Pfizer was an "apparent manufacturer" of the product under Restatement (Second) of Torts §

7 400.  Dkt. 23-1, at 10.  The Restatement (Second) of Torts § 400 provides:  "[o]ne who puts out

8 as his own product a chattel manufactured by another is subject to the same liability as though he

9 were its manufacturer."  Restatement (Second) of Torts § 400 (1965).

10                 **II.**       **DISCUSSION**

11     This opinion will first address Plaintiff's Motion to Certify Legal Questions to the

12 Washington Supreme Court (Dkt. 60) and then Defendant's Motion for Summary Judgment

13 (Dkt. 49).

14    **A. MOTION TO CERTIFY QUESTIONS**

15      Plaintiff moves to certify the following questions to the Washington State Supreme

16 Court:

17       (1) Does Restatement (Second) of Torts § 400 (1965) impose liability only if the
          defendant falls within the "chain of distribution" of an injurious product or does it
18           instead hold liable any entity that, though its actions, leads a reasonable purchaser to
          believe that the entity, and not some other party, was the actual manufacturer of the
19           injurious product?

20       (2) Whether the evidence produced by the Plaintiff in their response to the motion for
          summary judgment could, under Washington law, justify a jury in finding liability
21           under Restatement (Second) of Torts § 400 (1965) and, if so, the requirements of
          Washington law to permit such a finding?
22 Dkt. 60.

23

24

1   "Washington's Federal Court Local Law Certificate Procedure Act, Wash. Rev. Code §§

2   2.60.010–900, authorizes the Washington Supreme Court to accept certified questions from

3   federal courts."  *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 763 F.3d

4   1232, 1235 (9th Cir. 2014).  Under RCW 2.60.020, certification of a question to the Washington

5   Supreme Court is appropriate where "it is necessary to ascertain the local law of this state in

6   order to dispose" of a proceeding in federal court and "the local law has not been clearly

7   determined."  Further, under Washington's Rules of Appellate Procedure 16.16,

> The Supreme Court may entertain a petition to determine a question of law
> certified to it under the Federal Court Local Law Certificate Procedures Act if the
> question of state law is one which has not been clearly determined and does not
> involve a question determined by reference to the United States Constitution.

10  Plaintiff's motion to certify the above questions to the Washington State Supreme Court (Dkt.

11  60) should be denied.  In light of the facts here, Plaintiff has failed to show that "it is necessary

12  to ascertain the local law" in order to dispose of this proceeding in federal court or that "local

13  law has not been clearly determined."  This Court is able to address the merits of the motion and

14  does not require the assistance of the Washington Supreme Court.

15  **B. SUMMARY JUDGMENT STANDARD**

16  Summary judgment is proper only if the pleadings, the discovery and disclosure materials

17  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

18  movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

19  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

20  showing on an essential element of a claim in the case on which the nonmoving party has the

21  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

22  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

23  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

24

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## C. APPLICATION OF STATE LAW

As a federal court sitting in diversity, this court is bound to apply state law. *State Farm Fire and Casualty Co. v. Smith*, 907 F.2d 900, 901 (9th Cir. 1990). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'"

1  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v.*

2  *Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks*

3  *omitted*)).

4       The Washington State Supreme Court has not addressed whether it would adopt Restatement

5  (Second) of Torts § 400.  One Washington Court of Appeal has cited § 400.  *Turner v. Lockheed*

6  *Shipbuilding Co.*, 2013 WL 7144096 (W.D. Wash. Dec. 13, 2013) (*citing Martin v. Schoonover*,

7  13 Wash.App. 48 (1975)).  The Washington State Supreme Court has adopted several of the

8  Restatements.  *See e.g. Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291 (1975) (adopting

9  Restatement Second of Torts 46(1) and (2)).  Another court in this district has concluded that the

10 Washington State Supreme Court would adopt § 400.  *Turner v. Lockheed Shipbuilding Co.*,

11 Case No. C13-1747 TSZ, 2013 WL 7144096 (W.D. Wash. Dec. 13, 2013).  This Court likewise

12 concludes the Washington State Supreme Court would adopt Restatement (Second) of Torts §

13 400.

14     **D.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

15     The Restatement (Second) of Torts § 400 provides: "[o]ne who puts out as his own product a

16 chattel manufactured by another is subject to the same liability as though he were its

17 manufacturer."  According to Comment a, "[t]he words 'one who puts out a chattel' include

18 anyone who supplies it to others for their own use or for the use of third persons, either by sale or

19 lease or by gift or loan."  Restatement (Second) of Torts § 400 (1965), Comment a.  "The cases

20 which apply the apparent manufacturer doctrine demonstrate that section 400 applies only where

21 a retailer or distributor has held itself out to the public as the manufacturer of the product."

22 *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1236 (9th Cir. 1989)(noting that

23 although the Arizona Supreme Court had not adopted § 400, even if it had, there was insufficient

24

evidence that Goodyear had "put out" the product at issue). Although Plaintiff urges the Court to take a more expansive view on the scope of § 400, the Court adopts the *Turner* Court's view (and the reasoning) on how the Washington Supreme Court would apply § 400. It found:

> The Court concludes that the Washington Supreme Court would apply § 400 only to defendants in the chain of distribution. By its plain language, § 400 is applicable only to one who "puts out a chattel," explained in the comments as one who supplies it to others. Although the comment says that an actor appears to be the manufacturer of the chattel when he puts it out under his name or affixes to it his trade name or trademark, this still requires the defendant "put out" the chattel. An actor who allows his name or trademark to be placed upon a product, but plays no role in the distribution or supply of that product, does not "put out" the product and therefore does not fall within the scope of § 400.

*Turner v. Lockheed Shipbuilding Co.,* No. C13-1747 TSZ, 2013 WL 7144096, at *2 (W.D. Wash. Dec. 13, 2013).

Defendant's motion (Dkt. 49) should be granted and Plaintiff's case should be dismissed. Plaintiff has not shown that there are issues of fact regarding their "apparent manufacturer" claim under § 400. Like in *Turner*, Plaintiff alleges that Pfizer is the "apparent manufacturer" of the products at issue because Pfizer allowed its logo or name to appear on some of the products' written materials (including product labels, letter head, diaries, some purchase orders, some invoices, technical data sheets, and other marketing materials) next to the Quigley logo. *See e.g.* Dkt. 50-2, at 141 (label which prominently reads: "Manufactured by Quigley Company Incorporated" and on the next line in smaller print "Subsidiary of Chas. Pfizer & Co. Inc."); Dkt. 59-18 (letter head with both logos); Dkt. 59-19, at 3 (1972 Quigley diary with the Pfizer logo on top of the Quigley logo and the next line that reads "Subsidiary of Pfizer Inc." followed by "Manufacturers of Refactories Insulation and Precast Panels"); Dkt. 59-22 (invoice with Pfizer's logo and the Quigley logo with the next line "Subsidiary of Pfizer Inc."); Dkt. 59-21 (technical data sheet with both logos); Dkt. 59-16, at 2 (document entitled "Insulag Fireproof Cement" with

1  footer that contains a Pfizer logo next to a Quigley logo and on the next line reads:

2  "Manufacturers of Refactories – Insulation").  As was the case in *Turner,* and for the reasons

3  stated therein, review of these items demonstrates merely that there was a relationship between

4  Quigley and Pfizer, but does not suggest that Pfizer "put out" the asbestos containing products at

5  issue here.

6      As further evidence that Pfizer "put out" the products, Plaintiff argues that after Pfizer's

7  acquisition of Quigley, Quigley had to have an office in Pfizer's world headquarters in New

8  York; that invoices required payment to the New York address; sales were directed out of the

9  Pfizer headquarters; purchase orders (with a Pfizer logo) came from New York (but were signed

10  by a Quigley employee); Pfizer included, in its research and development budget, money for

11  non-asbestos related products; Pfizer included Quigley in its accounting system; Pfizer and

12  Quigley shared products liability insurance; and Quigley asked Pfizer for advice regarding

13  product labels and for help with winding down the use of asbestos products.  Dkt. 59.  None of

14  these various actions by Pfizer or Quigley show that Pfizer was in the chain of distribution.  They

15  again show that there was a relationship between the companies.

16      In additional support of her theory that Pfizer "put out" the products, Plaintiff points to

17  Pfizer's 1968 annual report to its shareholders which notes that Pfizer purchased Quigley,

18  Pfizer's 1969 annual report wherein a Quigley facility is labeled in a picture as a "Pfizer

19  construction site," and the Pfizer's 1970 annual report in which mention is made of "Quigley

20  Magnesite Division of Pfizer."  Dkts. 59-6; 59-10 and 59-20.  This evidence is unavailing.  The

21  somewhat inartful wording in these various annual reports does not transform Pfizer into one

22  who "puts out" the asbestos products.  There is no evidence that Pfizer "put out" the product[s] at

23

24

ORDER ON PLAINTIFF'S MOTION TO CERTIFY
QUESTIONS AND PFIZER, INC.'S MOTION FOR
SUMMARY JUDGMENT- 8

1   issue.  There is no evidence that Pfizer was in the "chain of distribution." *Turner,* at 2.  Pfizer's

2   motion should be granted.

3       Further, as in *Turner*, even if the Washington Supreme Court took a more expansive view of

4   § 400, and included parties which were not in the chain of distribution, Plaintiff's case should be

5   dismissed.  Aside from establishing that there was a relationship between Quigley and Pfizer,

6   review of the record leads the undersigned to conclude that there is no evidence that Pfizer "put

7   out" the product[s] at issue here.  "A parent/subsidiary relationship alone would not give rise to a

8   conclusion that Pfizer manufactured the product." *Turner,* at 3.  Pfizer's motion should be

9   granted.  Plaintiff has not shown that there are issues of fact as to her § 400 claim.  Plaintiff's

10  remaining case is barred by Quigley reorganization plan that channels all asbestos product

11  related claims against Quigley and Pfizer to the 524(g) trust.  This case should be dismissed. This

12  decision has no bearing on Plaintiff's claims, if any, against the 524(g) trust, and the dismissal

13  should be without prejudice as to those claims only.

14                                  **III.     ORDER**

15      Therefore, it is hereby **ORDERED** that:

16      • Plaintiff's Motion to Certify Questions to the Washington Supreme Court (Dkt.

17        60) **IS DENIED**;

18      • Pfizer, Inc.'s Motion for Summary Judgment (Dkt. 49) **IS GRANTED**; and

19      • This case **IS DISMISSED**;

20          o As to Plaintiff's claims, if any, against the 524(g) trust, the dismissal is

21            without prejudice to those claims only.

22      The Clerk is directed to send uncertified copies of this Order to all counsel of record and

23  to any party appearing pro se at said party's last known address.

24

ORDER ON PLAINTIFF'S MOTION TO CERTIFY
QUESTIONS AND PFIZER, INC.'S MOTION FOR
SUMMARY JUDGMENT- 9

1    Dated this 12th day of January, 2015.

2

3

4            ROBERT J. BRYAN
           United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24